UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 08-72-GWU

JAMES J. WILLIAMS,                                      PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

    4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

    7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

08-72  James J. Williams

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

5

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, James J. Williams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of residuals of an injury to his right wrist, post-phlebotic syndrome in his right leg and headaches. (Tr. 15).[1] Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Williams retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "light" level exertion with no limitations on standing, walking, or sitting, and additionally had non-exertional restrictions to only occasionally crawling and occasionally handling with his dominant right upper extremity. (Tr. 841). The VE testified that Mr. Williams could not perform any of his past relevant work with these restrictions (Tr. 841-3), but identified the jobs of security guard, gate guard, courier/messenger, and tube operator as being consistent with the hypothetical

---

[1] The plaintiff was also found to have hepatitis C, hypertension, and a history of polysubstance abuse, which were "non-severe." (Tr. 16).

factors (Tr. 843-4). She testified that her conclusions were consistent with the <u>Dictionary of Occupational Titles</u> (DOT), as mandated by Social Security Ruling (SSR) 00-4p. (Tr. 844).

There are a number of problems with the VE's testimony. Although she identified four jobs, with associated DOT numbers, the VE gave no indication of the number of jobs existing in the state and local economies for either the gate guard or the tube operator positions. (Tr. 843-4). Presumably for this reason, the ALJ cited only the security guard and courier/messenger jobs for the purposes of carrying the Commissioner's burden. (Tr. 19).

Regarding the two remaining jobs, the plaintiff notes on appeal that the DOT description of the job of courier/messenger (alternate titles for what the DOT refers to as "outside deliverer") at § 230.663-010 states that the job requires "frequent" handling, not the "occasional" handling specified in the hypothetical question. This contention is correct. Moreover, while the plaintiff dismisses the remaining security guard as being irrelevant because the jobs did not exist in significant numbers (a contention disputed by the defendant), the court's review of DOT § 372.667-034 shows that the security guard job also requires frequent handling.[2] Thus, both jobs would be incompatible with the hypothetical question. Although the ALJ may accept the testimony of a VE where it conflicts with the DOT, see <u>Conn v. Secretary of</u>

---

[2] Although the gate guard and tube operator positions cited by the VE were apparently not relied upon by the ALJ, the court notes that the applicable DOT §§ 372.667-030 and 239.687-014 provide that these jobs, too, require frequent handling.

8

Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995), the VE apparently thought there was no conflict. Thus, the reliability of the VE's testimony is called into question.

Therefore, a remand will be required for new vocational testimony.

The plaintiff also raises several other contentions on appeal.

The plaintiff's contention that it was error not to include his headaches and chronic leg swelling in the hypothetical question is without merit. It is the functional restrictions which are vital in the hypothetical question, and it is not necessary to provide a list of a claimant's diagnoses or "ailments." Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004). No treating, examining, or reviewing source, including a Medical Expert (ME) who testified at the second of two administrative hearings, noted any restrictions based on these conditions.

The plaintiff alleges that the ALJ failed in his duty to develop the record, noting that where, as here, a claimant is unrepresented, the ALJ has a heightened duty to "conscientiously probe into, inquire of, and explore all relevant facts." Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). The plaintiff in Lashley was an individual with a fifth grade education and described by the Sixth Circuit as "possess[ing] limited intelligence, was inarticulate, and appeared to be easily confused." Id. at 1052. The administrative hearing lasted only 25 minutes and produced only superficial questioning. Id. While finding that the plaintiff had been deprived of a full and fair hearing, the Sixth Circuit

cautioned that there was "no bright line test for determining when the ALJ has assumed the role of counsel or failed to fully develop the record." Id. Subsequently, the court reaffirmed its earlier position that "the mere fact that a claimant [is] unrepresented is not grounds for reversal." Duncan, supra, 801 F.2d at 855, citing Holden v. Califano, 641 F.2d 405, 408 (6th Cir. 1981).

In the present case, the ALJ conducted two hearings, specifically because he felt the record was not sufficiently developed at the time of the first hearing. (Tr. 823). The ALJ made sure that the plaintiff understood that, although his previous attorney had withdrawn, he could retain other counsel on a contingency fee basis. (Tr. 810-12). The plaintiff declined, apparently on the basis that it was "a lot of trouble to . . . go find an attorney." (Tr. 811). Unlike the relatively uneducated plaintiff in Lashley, Mr. Williams was a high school graduate who had completed one year of college, and reported that he made average marks in regular classes. (Tr. 70, 466). He was able to question the ME and elicited the information that certain medications for migraine headaches would interfere with his blood pressure medication. (Tr. 837). He now alleges that the ALJ should have recontacted his treating sources to obtain more information, but the regulations require this to be done only if the evidence is inadequate to make a determination. 20 C.F.R. §§ 404.1512(e); 416.912(e). In the present case, in addition to hundreds of pages of medical records from treating and examining sources, the ALJ relied on the testimony of an ME who had the opportunity to review all of the evidence. Counsel

08-72   James J. Williams

for the plaintiff refers to "VA updates" which were not obtained, but has not submitted any evidence of such updates or shown what additional information they would have given the ALJ or the ME. For all of these reasons, this argument is without merit.

The plaintiff additionally argues that the ALJ failed to follow the Commissioner's regulations in developing the issue of his alcohol and drug addiction, but the procedure outlined is only applicable when the plaintiff has been found to have been disabled. The ALJ then follows certain procedures to determine the materiality of the substance abuse to the disability determination. 20 C.F.R. §§ 404.1535; 416.935. The ALJ did not find the plaintiff disabled, and did not even find that his history of polysubstance abuse was a "severe" impairment. Consequently, this argument is also with merit.

Finally, the plaintiff argues that the ALJ should have considered a brief letter from the Department of Veterans Affairs indicating that he had been awarded non-service-connected pension benefits for "migraine headaches by history," which were considered 50 percent disabling, and hypertension, microcytic anemia, hepatitis C, limitation of motion of the right wrist, and deep vein thrombosis of the right leg, all of which were considered to be 10 percent disabling. (Tr. 494). The plaintiff admits that the defendant was not bound by the findings of the other agency but asserts that they are entitled to some weight and must be considered in the ALJ's decision. While it is clear that decisions of other agencies are not <u>binding</u> on the

08-72  James J. Williams

Commissioner of Social Security, as provided in 20 C.F.R. §§ 404.1504 and 416.904, there is some Sixth Circuit authority to support the plaintiff's contention that they must be <u>considered</u>. <u>Stewart v. Heckler</u>, 730 F.2d 1065, 1068 (6th Cir. 1984).[3] Since the case is being remanded, this matter can be addressed along with the Vocational Expert testimony.

The decision will be remanded for further consideration.

This the 11th day of February, 2009.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**

---

[3] One authority notes that the regulations do not determine what non-binding weight, if any, should be given to the decisions of other agencies, but suggest that the best approach is to "set the weight to be given according to the facts involved in particular issues raised in both the Veterans Administration and the Social Security Administration disability determination." Frank S. Bloch, <u>Bloch on Social Security</u> § 3:4 (2009). In this regard, the court notes that several of the factors cited in the VA decision were found to be non-severe, and others limited the plaintiff only mildly. The evidence indicates that the plaintiff's hypertension, for example, was generally under control (e.g., Tr. 557) and in April, 2005, hepatitis C testing was actually negative, although it had been positive in the past (Tr. 643).